Good morning. My name is Paul Conant. I represent the plaintiff-appellant Stephen Zell in this Nevada contract law interpretation case that was decided in the District Court of Arizona by Judge Campbell. My client's claims were dismissed on a motion for summary judgment. And I think probably the best way for me to address the questions that the panel may have after the briefing is to focus on Judge Campbell's order that granted the motion for summary judgment. And to point out our areas of disagreement, which are substantial on the issues of Nevada law, with the order. Judge Campbell's order correctly begins with an analysis of the claims and indicates that on most of the claims we need to show reliance. But then concludes that Zell could not have, could not prove reliance because he had exercised a put option to put his ownership interest back to his partner, the selling party, the defendant Rick Burton. That he had exercised the option in accord with its terms. And that, therefore, the option became irrevocable. And I think the key place where Judge Campbell's analysis began to go wrong is with a conflation of the concept of when you create a binding contract through the exercise of a put option. And whether it is irrevocable at the time that you create the contract. Nevada case law says, uses terms that were at least unfamiliar to me as an Arizona lawyer, in reference to the option as a unilateral contract. In other words, the party holding the option right has this unilateral contract. And if you exercise the option in accordance with its terms, then you can create a contract. We agree with all of that. What Judge Campbell's ruling says, which I don't think is the law in Nevada at all, and the cases that are used to support this contention do not say this. Judge Campbell says that once you do that, once you exercise the option and create that contract, that the contract is irrevocable. I don't think that's correct. I think there's a contract, but I don't think that's correct. What case do you depend on that holds that it's irrevocable? Pardon me? What Nevada case do you depend on that holds that once it's exercised, it's irrevocable? I don't think there are any Nevada cases that say that it is revocable or irrevocable one way or another. What the Nevada cases say is that you have a binding contract. Now, there's an enormous body of law about when you have a binding contract, how you can get out of that contract, for example. Right. But almost. I don't know very many that say, oh, now I want to undo it. Because then is it really a contract? No, no. I don't mean to suggest that there's this body of law that says you don't, that once you've made a contract, you don't have to follow through with it. However, there are, the legal rules say that you can get out of a contract if there was a mistake. You can get out of a contract if there was fraud. You can get out of a contract on numerous grounds. Just because you've made the contract. Well, but I don't know of any state that's ever said that if you figure out maybe you made a bad bargain, that you can just say, okay, now I revoke it. Well, that's not, that isn't what Ezell's claim is, and hopefully the Court doesn't think that that's what Ezell's claim is. What we say is that Ezell would have revoked the exercise of the put option if he had known the facts that his partner knew. And his partner had an obligation to tell him those facts. No, but the other cases you're talking about is not about revoking. It's really about, you know, whether it should have been entered into in the first place. That doesn't seem to be your case, does it? Well, those are, I think you're referring to cases we have cited on the contract interpretation rules, because that's where, that's where the issue comes in. In other words, we have an option here where the only testimony in the record is that Ezell says, and it's not controverted, he thought that the option was revocable. He focused on language on the first page of the document where the word option is used twice. And he said, it's my option. I hold the option. In other words, it's like an on-off switch. I don't think it matters what he thought, because, you know, we don't have a subjective theory of contracts. And, you know, that's not controlling at all, is it? Well, the Nevada Supreme Court's. I mean, if it differs with, you know, the contract that he signed, that he had a chance to review, and then that he signed these two releases afterwards. The option agreement, I think it is important to have his understanding. For example, if he said, I didn't think it was revocable, well, then the case would be over. He said, I believe the contract was revocable. It wouldn't be over if it were revocable, even if he thought that. That's not true. That isn't true at all. I just didn't hear the first part. I said it wouldn't be over even if he thought it was not revocable if, in fact, it was revocable. He could still revoke it. Yeah. Right. I think we're saying the same thing. If the contract was revocable, his testimony is he would have revoked it. And he believed that it was revocable because of the use of the word option, the two points on the first page of the agreement. He felt that's his case. I mean, you've got to give me something more than that just because he thought it was revocable. Oh, there is more. I just wanted to make sure we were clear on that point. He also testified that Burton. Oh, we're clear on the point as far as I'm concerned. That doesn't mean a thing. Okay. There are other. There's negotiation and post-contracting evidence as well. The negotiation evidence is that Burton told him that it was revocable. And then after he exercised. Well, that deposition testimony seems very dubious to me that that's what he's really saying. It's difficult to get. It's difficult to, because the answer is really chopped up. And I appreciate the fact that you've read it when you tell me that it's dubious. I understand it's difficult to parse that out. At summary judgment, though, those inferences are to be taken at least in our favor. And then the third item of evidence would be that after the exercise of the contract, Ezell told Burton or informed Burton, hey, you know, I know or you know I can revoke my exercise of the put option. And Burton did not disagree with that. So you have. Those are the three items of evidence that you have in the record. I understand. You're not trying to argue fraud, I take it. You're not arguing fraud or misrepresentation or deceit or anything like that. It is an omission. That's right. In other words, Ezell exercised the option based on a vacuum of information that his partner had and should have disclosed to him. If the option was revocable, wouldn't it be revocable by either side? Well, no, because I believe that the law in Nevada on options is that it is this unilateral contract that either binds or doesn't bind the holder of the option. Yeah, but that's before you exercise the option. Understand that I agree with you. Once you exercise the option, it still hasn't closed. And we've cited the cases in Nevada, for example. Even the Calde case says that goes into this analysis about, well, what happens when an option is exercised but there's no closing? Neither side has repudiated, and the parties just maintain their status quo. The Court says until somebody does something, you really can't evaluate it. And, in fact, the Court So there's no contract? No, there's a contract. There's a contract, but they don't say that it's irrevocable. The conflation of the existence of a contract and making the contract irrevocable, I think, is where the error comes from. Well, you're down to a minute and a quarter. What about the release? There are two release arguments. The first release argument we've dealt with with our citation to restatement. And the law on that is that because the release language was put in the last draft of the document at Burton's house after the lunch meeting and wasn't pointed out to his cell, wasn't negotiated or bargained for. Well, what about the next release after that? Well, that document also was based upon nondisclosure by Burton. What do you mean? It was right in front of him. He signed it. How can it be nondisclosed? Because the paper right here, it says release, and then he signs it. How can that be nondisclosed? I'm sorry. I don't mean to say that the It says, you know, release all claims, right? That language It references the earlier document. It references the earlier document that contains references to release. It was in front of him when he put his signature to it. Our point is that that second document was done at a time when there still was no disclosure about the beneficial things that had happened in the partnership. That document, Ezell was told, was necessary for him to finalize the conveyance. In other words, it was part of the overall transaction, and there still was no disclosure, not of the document, but there was no disclosure of the underlying facts. Okay. You have used your time. Your strongest case in Nevada that supports you is what? I would say that there are two. One would be the Stanley case, the Great Wake case. There's an element of Calde, the 30-day discussion in a Calde case, even though it's cited by the other side, and then the NGA and Raines case. Thank you. You've used your time. May it please the Court. Good morning, Your Honors. Chris Reeder and Beverly Liu on behalf of the appellee, Rick Burton. Your Honors, this case really is a case of seller's remorse, and seller's remorse when the seller really got a good deal. Mr. Ezell. But I think he's saying his remorse is based upon things that were not disclosed to him that should have been disclosed to him, right? His claim. At the time he exercised his option. His claim, actually, Your Honor, his claim is that things happened in the development after he exercised his put option, but before the closing, that he claimed should have been disclosed to him. Now, the district court was very clear in its order that despite the plaintiff's attempt, in opposition to the summary judgment, to raise new misrepresentations that he alleged had occurred before he had exercised the put, that those hadn't been properly pled, and those were not considered by the court. So what we were dealing with on the summary judgment was alleged omissions or not telling Mr. Ezell something after he exercised his put, but before the close. And the court's decision to exclude the former before the put is not before us now, I gather. That has not been pled by appellants as part of this. Yes. I haven't read in their briefing. The briefing doesn't seem to really focus on the misrepresentation case, to be fair, to the appellant. The appellant's position seems to be that they believe that the judge incorrectly ruled on the revocability issue. So to be fair to the appellant, I don't think they raised that, but the order was very clear that they couldn't raise the new alleged misrepresentations. Now, the interesting thing, and the interesting thing about the case was, okay, well, someone exercised a put and they're going to get out of the deal. Where is there a source of a duty to keep talking to them about the development when they're already out and you're desperately trying to raise money to pay them? But that was really a more fact-intensive issue. It really wasn't the focus of the summary judgment. The summary judgment was actually very simple. Wasn't that what Judge Campbell said? I mean, there was no reliance? Yes. No reliance, Your Honor. There could be no reliance because once he exercised his option, he had a requirement to sell and Mr. Burton had a requirement to buy. And by the way, it makes sense. Really, we've cited a lot of cases in the brief. We've discussed a lot of cases. But really, this fundamentally just goes down to the first principles of contract law, offer acceptance and consideration. If there was an implied term of revocability in every contract, there would be no contracts because they would just be revocable at will by either party. And so in a case of this nature where you have an option, and especially a put option is interesting because when Mr. Rizal exercised that put option, that was not good news for Mr. Burton. That meant Mr. Burton had to go find the money to pay the put option plus the interest on a development where Mr. Rizal's money was used to acquire land. So that was not good news. Now, ultimately, financially, it turned out to be a blessing in disguise. But Mr. Burton had to go out. He had to go raise money. He had to do things in reliance on that, on the exercise of that put option in order for him to meet his obligations. And therefore, it would be a strange principle to say that in an option agreement that the optionee can revoke at any time before they close. Mr. Rizal eventually got more than just the interest on the $5 million, right? He got – well, he got a negotiated sum. The original interest under the put agreement should have been about 5.1 million. He ended up getting 5.3 million. But part of that was the closing date ended up being a little longer than what was under the original agreement. So he got his interest rate for the amount of time the money was used pursuant What about the plaintiff's contention that there is a deposition testimony in the record that the defendant orally agreed that the option was revocable? Two things, Your Honor. What kind of struck me when I read that in the appellant's brief, I kind of remembered the old principle that a mere scintilla is not enough. Well, a mere scintilla – Scintilla. Scintilla. I'm sorry. Is that an Ohioan accent coming through? Presented to the Court of Appeals and not the trial court, that's definitely not enough. I had the pleasure of taking that deposition testimony, and actually the colloquy at the time was not – was about emails Mr. Rizal had written after he had exercised the put but before the close, not at the time of contract formation. And I don't know of any testimony in the record that there was any discussion about revocability before the contract was entered. Now, after Mr. Rizal exercised his put option, he started writing emails saying, you know, I can revoke this if I want to, you know, but that really has no bearing on what the meeting of the minds were at the time the parties entered into the contract. And that was the colloquy during the deposition, and I think if you read the whole excerpt at the end, he finally admits that Mr. Burton did not agree with him. He remained silent in response to those emails. So I think if you read the whole thing, that's it. So I don't think that raises any issues. The district court didn't have the opportunity to consider it because the argument was made for the first time in this court. So I think it's waived and, frankly, it's immaterial. It wouldn't raise a genuine issue. Anyways, because the bottom line is we have an agreement. We have an option agreement. The option agreement has a mechanism to trigger it and to close. That mechanism was followed. There's nothing in there that says it's revocable by either party. It would be incredibly difficult to go finance an option put to buy it out if the other party could just come in and revoke it at any time. That's not there. And that really is, in our view, the beginning and the end. It's just first principles of contract law. Offer acceptance and consideration. And if someone was going to say in every contract that, you know, it was revocable or I thought it was revocable, we wouldn't have any contracts because everything would just be revocable. And then, of course, we come to what's fairly significant as well is Mr. Rizal signed not one but two releases. The first release, I must take issue with my colleague a little bit. It was not in the last draft. We submitted the evidence and we did it in the district court. There were two prior drafts that the release language was in. The document is a whopping two pages long, exclusive of signature pages, and there's a title that says mutual releases. And then, assuming Mr. Rizal didn't read the document, which of course we know not reading a document is not a legal basis to avoid its obligations, he once again signed a release again. And as the court probably has seen in the record, there can't be any inference of Mr. Burton doing anything untoward there because the document was faxed to him in Paris and he signed it in Paris. So there's two releases. And so, you know, unfortunately we have a situation where, you know, Mr. Rizal would like to get out of those releases by making certain claims, accusing people of things with really no basis. But at the end of the day, there were two documents that he signed that contained releases that really would dispose of the matter. In addition, he could not have relied on anything going on with the project. And the reason I'm not talking about misrepresentations is, in this case there really weren't any alleged misrepresentations. The claim was that somehow. A failure to disclose. There was a failure, yeah, failure to disclose. And that would raise an interesting issue of duty, if not for the reliance, you know, element of it. But I think if you take the reliance, he exercised his put. The put agreement does not say it's revocable. And he then closed on his put. Okay. I think that. And that's the end of the matter. Thank you very much, Your Honor. Thank you. Are there any further questions of the appellant? No. Thank you. The case just argued is submitted for decision. And the last case on the calendar, Wild Gaming v. Wong Manufacturer. Manufacturing is submitted on the briefs. And that concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Tashima, Roth